UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S.O. CORPORATION, a Delaware corporation, ) ) ) ) | |
| Plaintiff, ) ) ) | |
| vs. ) ) ) | No. 06 C 0459 |
| MIZUHO HOLDING COMPANY, ) MIZUHO CORPORATE BANK, ) MIZUHO BANK, MIZUHO PROJECT, ) MIZUHO SECURITIES COMPANY ) LTD., YASUSHI IKEDA, an individual, ) KOWA REALTY (AMERICA) LTD., AND ) DOES 1-20, ) ) | Judge Joan H. Lefkow |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This is an action for conversion, breach of fiduciary duty, conspiracy, unjust enrichment, and money had and received. On November 11, 2006, defendants Mizuho Bank, Ltd., Mizuho Corporate Bank, Ltd., and Mizuho Financial Strategy Co., Ltd. (collectively, the "Mizuho Bank Defendants") filed a motion to dismiss plaintiff U.S.O. Corporation's ("USO") complaint under the doctrine of *forum non conveniens*, for lack of personal jurisdiction, because another action is pending, and for failure to state a claim. Dkt. No. 72. In lieu of a response to the Mizuho Bank Defendants' motion, on December 7, 2006, USO filed a "Motion for Leave to Take Targeted Discovery Relating to Jurisdictional Issues." On January 19, 2007, the court denied USO's motion without prejudice, directed USO to respond only to the Mizuho Bank Defendants' briefing on the issue of *forum non conveniens*, and stated that it would consider the Mizuho

Bank Defendants' jurisdictional argument at a later date, if necessary. *See* Dkt. No. 90. USO filed its response to the Mizuho Bank Defendants' motion on March 6, 2007,[1] and the Mizuho Bank Defendants replied on March 23, 2007. For the reasons stated below, the Mizuho Bank Defendants' motion to dismiss plaintiff USO's complaint [#72] under the doctrine of *forum non conveniens* is granted.

## BACKGROUND[2]

Plaintiff USO is a Delaware corporation that was formed in 1990 as a wholly owned subsidiary of Asahi Kogyo Corp. ("Asahi Kogyo"), a now bankrupt Japanese company that had a banking relationship with Industrial Bank of Japan ("IBJ"), which was the predecessor in interest to the Mizuho Bank Defendants. In 1985, it was common business practice in Japan for companies to maintain a close relationship with a particular bank, known as the company's "main bank." The relationship between a main bank and its borrower was a fiduciary one, in which the main bank was given control over the borrower's business in exchange for assuming responsibility for the borrower's financial well-being. In or about 1985, IBJ became Asahi Kogyo's main bank. A few years later, in 1990, IBJ instructed Asahi Kogyo to form an

---

[1] In its response to the Mizuho Bank Defendants' motion, USO argued that it might be inappropriate for this court to dismiss an action for *forum non conveniens* before determining that it had personal jurisdiction over the defendants. After USO submitted its response, the Supreme Court decided in *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.* that a district court has the discretion to consider a defendant's *forum non conveniens* argument before taking up the issue of personal jurisdiction. 549 U.S. ___, 127 S. Ct. 1184, 1188, 167 L. Ed. 2d 15 (2007). On March 9, 2007, USO formally acknowledged the Court's ruling in *Sinochem* and withdrew its challenge to this court's decision to postpone ruling on personal jurisdiction questions pending resolution of the *forum non conveniens* issue.

[2] For purposes of this motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World, Inc.* v. *Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir.1996).

American subsidiary to invest in a portion of the Paine Webber Tower in Chicago, Illinois. That year, Asahi Kogyo formed USO, capitalizing it with $10 million.

USO, however, was never a direct owner of the Paine Webber Tower. The Paine Webber Tower was owned by an Illinois partnership ("the PWT partnership") composed of three partners: Daido Properties Investment, Inc., Yasuda Realty Corp., and Madison Club 90, Ltd. Madison Club 90 was a limited partnership established under Delaware law that owned approximately a 25% interest in the Tower. USO, along with four other companies for which IBJ was the main bank, was a limited partner in Madison Club 90. Kowa Realty (America), Ltd. ("Kowa") was the managing general partner of the Madison Club 90 partnership.

The Madison Club 90 partnership operated from 1990 through September 2001, when the Paine Webber Tower was sold. During that time period, Kowa managed the partnership. USO alleges that Kowa skimmed money from USO's profits for the benefit of Kowa and IBJ (and subsequently the Mizuho Bank Defendants), using various means, including inflated management fees and expenses. According to USO, Kowa actively concealed this practice from USO and did not provide disclosures from which USO could have uncovered the wrongful conduct. For purposes of this motion to dismiss, these allegations will be referred to as "the profit-skimming claims."

USO also alleges that after the Paine Webber Tower was sold in 2001, the Mizuho Bank Defendants seized and converted USO's share of the sale proceeds, which amounted to $6.95 million. According to USO's complaint, prior to the sale of the Paine Webber Tower, Makoto Takahashi of IBJ sent the President of Asahi Kogyo, Yoshio Okamoto, an unsigned and undated "confirmation letter." This letter stated that Mr. Okamoto, as Representative Director of Asahi

3

Kogyo, and USO, agreed to "repay" USO's proceeds from the sale of the Paine Webber Tower to IBJ, "as had been promised previously." Though Mr. Okamoto had made no such promise, he dutifully executed a "guarantee letter" and returned it to IBJ, according to IBJ's instructions. *See* 2d Am. Compl. at 6–7. Before USO received its share of the proceeds, IBJ required Okamoto to open a new account at IBJ for Sun Foods, another company owned by Mr. Okamoto. Following the sale of the tower, IBJ, acting through Kowa, placed USO's sale proceeds in an account for USO at IBJ. IBJ then created documentation purporting to transfer the money to the newly-created Sun Foods account. For more than one and a half years, the sale proceeds remained in the Sun Foods account. On March 31, 2003, however, the Mizuho Bank Defendants, acting as successor to IBJ, purported to "foreclose" on the money in the Sun Foods account by emptying that account. For purposes of this discussion, these allegations will be referred to as "the expropriation claims."

## PROCEDURAL HISTORY

In March 2005, USO filed suit in an Illinois court against the Mizuho Bank Defendants and others. On January 25, 2006, following preliminary rulings in the Illinois court dismissing certain parties, the Mizuho Bank Defendants removed the case to federal court. USO's motion to remand was denied on July 28, 2006. *See* Dkt. No. 52.

On November 2, 2005, the Mizuho Bank Defendants filed suit in Tokyo District Court against USO and the bankruptcy trustee of Mr. Okamoto, seeking a declaratory judgment that claims similar to those claims alleged in USO's Second Amended Complaint in this case are meritless. Sometime thereafter, USO filed a motion to dismiss the Japanese proceeding, arguing that under Japan's "double litigation rule," courts do not have jurisdiction to consider after-filed

4

declaratory relief claims that usurp the jurisdiction of another court. On March 20, 2007, the Tokyo District Court issued an interim judgment denying USO's motion to dismiss or stay the Japan action.

Finally, on or around November 17, 2006, the bankruptcy trustee of Asahi Kogyo and Mr. Okamoto commenced an avoidance action against the Mizuho Bank Defendants seeking the return of the approximately $7 million transferred from USO.

## DISCUSSION

The court may dismiss a case under the doctrine of *forum non conveniens* when it "best serves the convenience of the parties and the ends of justice." *Kamel* v. *Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997) (citing *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). The *forum non conveniens* inquiry is guided by several considerations. First, an adequate alternative forum must be available to hear the case. *Id.* at 802. If this threshold criterion is satisfied, the court must then balance the private interests of the litigants and the public interests of the forum to determine the superior venue. *Id.* at 803. Dismissal is proper if "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 256 & n.23, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). The defendants bear the burden of persuading the court that a suit should be dismissed under the doctrine of *forum non conveniens*. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2002). The *forum non conveniens* determination is "consigned to the trial court's sound discretion." *Kamel*, 108 F.3d at 802.

## I. Availability and Adequacy of Japan as Alternative Forum

The first step in the *forum non conveniens* analysis is to determine whether an "adequate alternative forum is available." *Id.* at 802 (citing *Piper*, 454 U.S. at 254). The court must thus consider both (1) the availability and (2) the adequacy of the alternative forum. *Id.* at 802. An alternative forum is available when "all parties are amenable to process and are within the forum's jurisdiction." *Id.* at 803. An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly." *Id.* (citing *Piper*, 454 U.S. at 255).

Because the remaining[3] named defendants in this case are all citizens and residents of Japan, they are all amenable to service of process and within the jurisdiction of a Japanese court. Furthermore, doubts raised by USO as to whether a Japanese court could assert jurisdiction over the underlying claims at issue in this case are moot in light of the Tokyo District Court's March 20, 2007 interim judgment. In that case, which concerns "claims substantially identical" to the claims alleged by the plaintiff in this case, the Tokyo District Court found that it "was the proper forum" for this dispute and that "it is not unfair or against judicial propriety or expeditiousness to proceed in Tokyo." Shimada Reply Decl. ¶¶ 3, 4. In support of its decision, the court also found that "[t]he 'place of alleged wrong' for the expropriation claim is in Tokyo," that "witnesses and the documentary evidence concerning the expropriation claim are located in Japan," and that "Japanese law governs the dispute." Shimada Reply Decl. ¶ 4. A Japanese court is therefore an available forum for this dispute.

The defendants have provided substantial support—largely uncontroverted by the plaintiff—for their contention that Japan is also an adequate forum in which the plaintiff would

---

[3] In its July 28, 2006 order, the court found that defendant Kowa Realty (America), Ltd. ("Kowa"), which was dissolved more than five years ago, is not amenable to suit. Dkt. No. 52.

not be deprived of all remedies or treated unfairly. "A court may dismiss on *forum non conveniens* grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress." *Kamel*, 108 F.3d at 803 (internal quotation marks and citations omitted). According to the defendants' expert,[4] while Japanese law does not provide statutory provisions identical to the causes of action invoked by USO in this case (*i.e.*, conversion, breach of fiduciary duty, conspiracy, unjust enrichment, and money had and received), Japanese courts do recognize civil causes of action for damages (*e.g.*, breach of contract, intentional tortious act, and unjust enrichment) based on allegations similar to those raised by USO in this case. Shimada Decl. ¶¶ 14–17; *see also Borden, Inc.* v. *Meiji Milk Prods. Co., Ltd.*, 919 F.2d 822, 829 (2d Cir. 1990) (finding that Japan was an adequate alternative forum even though it would not provide all of the same remedies as an American court). Under Japanese law, for example, a corporation that committed an intentional tortious act or benefitted from unjust enrichment would be obligated to compensate the persons harmed or to disgorge the unjustly gained benefit. Shimada Decl. ¶ 16. Thus, if successful, plaintiff USO could obtain compensatory damages, including interest and other fees, in a Japanese court. Shimada Decl. ¶ 16. Japan is therefore an adequate alternative forum for this dispute.

## II. Balancing of the Private and Public Interest Factors

---

[4] In support of their assertions about Japanese law, the Mizuho Bank Defendants submitted the declarations of Kunio Shimada, Esq., an attorney in Japan who specializes in commercial litigation and is licensed to practice law in both Japan and the United States.

Having found that Japan is an available and adequate alternative forum, the court must balance the private and public interest factors to determine whether Japan or the United States is the more appropriate forum. *Kamel*, 108 F.3d at 803; *Gulf Oil*, 330 U.S. at 508. "If the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 255–56 n.23.

### A. The Private Interest Factors

Factors related to the private interests of the parties include (1) "the relative ease of access to sources of proof," (2) the "availability of compulsory process for the attendance of unwilling witnesses" and "the cost of obtaining the attendance of willing witnesses," (3) "the possibility of viewing the premises, if necessary," and (4) "all other practical problems that make trial of a case easy, efficient and economical." *Kamel*, 108 F.3d at 803; *see also Gulf Oil*, 330 U.S. at 508. Because the third factor is irrelevant to this case, the court need not consider it here, but will consider each of the other three factors in turn.

### 1. The Relative Ease of Access to Proof

With respect to the first factor, access to proof will clearly be eased by trial in Japan rather than the United States. Defendants have made a strong showing that virtually all of the documents relevant to USO's expropriation claims are located in Japan. The expropriation of funds alleged by USO involved a transfer of funds from one Japanese account to another Japanese account. The bank records concerning this transaction, as well as any related agreements between Asahi Kogyo, IBJ, USO, Mizuho, and Okamoto, are thus likely to be located in Japan and written predominantly in Japanese. In addition, the Mizuho Bank

8

Defendants aver that plaintiff USO has already introduced as evidence in the Tokyo District Court "over 1000 pages of transcripts of Japanese meetings and telephone conversations, divided into 141 exhibits." Def.'s Reply at 11. Indeed, the Japanese court found in its interim judgment that the "documentary evidence concerning the expropriation claim [is] located in Japan." Shimada Reply Decl. ¶ 4.

USO has largely neglected to discuss—much less rebut—the Mizuho Bank Defendants' assertion that sources of proof relevant to the expropriation claims are predominantly located in Japan and written in Japanese. On the other hand, USO has raised a number of concerns with respect to ease of obtaining proof of the profit-skimming claims. As the court has previously noted, however, USO's profit-skimming allegations are secondary to its expropriation claims, not only because of the smaller dollar size of the profit-skimming claims but also because of their relative simplicity. *See* Dkt. No. 90. The court made clear that the defendants' *forum non conveniens* motion will turn on whether it is more appropriate for the parties to litigate the expropriation claims, which are at the heart of this dispute, in Japan. *Id.*

Nonetheless, USO contends that, in Japan, it would "have no effective means for procuring the evidence necessary to prove" its profit skimming claims, and that "pursuing at least those claims would be impossible there"; thus, USO argues, "[d]ismissing this case effectively would dismiss at least the profit-skimming claims on the merits." Pl.'s Resp. at 9. Even USO's own expert, however, does not support USO's repeated suggestion that "Japan has virtually no procedures for discovery." *See* Pl.'s Resp. at 14 (citing Kobayashi Decl. at ¶¶ 4–5). In support of this argument, USO cites the declaration of Akitaka Kobayashi, *see* Pl.'s Resp. at 9 (citing Kobayashi Decl. at ¶¶ 4–5); but Mr. Kobayashi concedes that under Japanese law, "a

9

litigating party may try to obtain limited access to documents from an adversary," and asserts merely that, "in practice, requests for production of documents are *somewhat* ineffective as a means of obtaining documents." Kobayashi Decl. at ¶ 5 (emphasis added). In fact, a number of American courts have previously recognized that while Japanese courts do not provide the full range of expansive discovery allowed in the United States, meaningful discovery is available in Japan. *See Lockman Found.* v. *Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (finding that district court did not abuse its discretion when it rejected plaintiff's argument that "there is no pretrial discovery in Japan"); *Abbott Labs.* v. *Takeda Pharm. Co.*, No. 05 C 3758, 2006 WL 539341, at *4 (N.D. Ill. Feb. 24, 2006) (noting that, if plaintiff were to litigate its claim for breach of fiduciary duty in a Japanese court, plaintiff "would be entitled to conduct meaningful discovery in Japan").

Because of the substantial and unnecessary burdens that the litigants would face in obtaining relevant evidence if this case were litigated in the United States rather than Japan, the first private interest factor weighs heavily in favor of dismissal.

**2. The Availability of Compulsory Process for Compelling the Attendance of Unwilling Witnesses and the Cost of Obtaining the Attendance of Willing Witnesses**

The second factor, which considers the relative availability of process for compelling the attendance of unwilling witnesses and the costs associated with obtaining the attendance of willing witnesses, also favors a Japanese forum. The Mizuho Bank Defendants contend that virtually all of the witnesses relevant to USO's claims are located in Japan and that, as a consequence, the difficulty and cost of travel and translation would make a trial in Japan easier, more expeditious, and less expensive.

The Mizuho Bank Defendants support their factual contentions with the declarations of Kyoji Ono, Yasuhiro Saito, and Isao Sakamoto. Taken together, the declarations identify by name more than twenty current and former employees of IBJ and its predecessors and successors who dealt during the relevant time period with Asahi Kogyo and other business owned or operated by Mr. Okamoto, including USO, and who could thus be potentially called as witnesses at trial. The declarations further show that most if not all of these potential witnesses reside in Japan and have no English language skills. Finally, the declarations identify by name twelve non-party witnesses that might be witnesses at trial. These potential non-party witnesses also reside in Japan and have no known English language skills. The Mizuho Bank Defendants further note the difficulty associated with obtaining compulsory process for unwilling witnesses living in Japan. Because Japan is not a party to the Hague Evidence Convention,[5] compelling evidence, whether testimonial or documentary, from a third-party witness in Japan for a case litigated in an American court is extremely burdensome and sometimes impossible. *See* Craig P. Wagnild, *Civil Law Discovery in Japan: A Comparison of Japanese and U.S. Methods of Evidence Collection in Civil Litigation*, 3 ASIAN-PAC. L. & POL'Y J. 1, 19 (2002); U.S. Dept. of State, *Japan Judicial Assistance*, http://travel.state.gov/law/info/judicial/judicial_678.html#evidoverviewsum (last visited Sept. 19, 2007) (noting that "major obstacles still exist that effectively preclude most forms of discovery" for American courts attempting to collect evidence in Japan). It is also worth noting that, in its interim judgment, the Tokyo District Court

---

[5] Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555.

found that "the witnesses . . . concerning the expropriation claim are located in Japan." Shimada Reply Decl. ¶ 4.

USO fails to rebut defendants' assertions about the availability and location of witnesses and the costs associated with obtaining their attendance. As with the first factor, ease of access to proof, USO's arguments are primarily concerned with the profit-skimming claims, rather than with the expropriation claims that are at the heart of this litigation.[6] USO contends that most of the non-party witnesses related to the profit-skimming claims are located in the United States and not subject to compulsory process in Japan. But even if this *forum non conveniens* analysis were equally concerned with the profit-skimming claims, the court has reason to doubt USO's predictions about where the witnesses relevant to the profit-skimming claims are likely to be located. *See* Ono Decl. ¶ 17. Both the witnesses associated with the alleged victims of the profit-skimming claims (e.g., Okamoto and other individuals at Asahi Kogyo and USO) and the witnesses associated with the alleged tortfeasors (e.g., the Mizuho Bank Defendants) are predominantly, if not entirely, located in Japan. In addition, Madison Club 90 LP, the investment vehicle in which the alleged skimming took place, appears to have its principal place of business in Tokyo.

Nonetheless, USO suggests that a number of individuals at various management, investment, law, and accounting firms based in the United States are likely to be witnesses with

---

[6] In its limited discussion of witnesses related to the expropriation claims, USO asserts that "[m]ost of the witnesses capable of testifying about defendant's appropriation of USO's funds are parties." Pl.'s Resp. at 13. Because the remaining parties to this lawsuit are predominantly, if not entirely, composed of Japanese residents and citizens, USO itself thus suggests that most of the witnesses relevant to the expropriation claims are Japanese residents and citizens. *Id.*

respect to the profit-skimming claims. USO suggests, for example, that individuals from Miglin-Beitler, Inc., a Chicago-based management firm who "ran the day-to-day affairs of the rental of the Paine Webber Tower," will be able to testify regarding "expenses and overhead of operating" the building; that individuals from KPMG, the American accounting firm that audited the Paine Webber Tower partnership ("the PWT partnership") will be able to testify regarding the PWT partnership's accounting practices; that individuals from Yasuda Realty America ("Yasuda"), a New York corporation that was a limited partner in the PWT partnership, will be able to testify concerning the PWT partnership; and that individuals from UBS, a firm that "acted as an advisor to Yasuda" concerning the PWT partnership, "may have information, or may be able to verify, authenticate, and discuss records related to [PWT] partnership profits, expenses, audits, accountings, and distributions." Pl.'s Resp. at 11–12. The relevance and essentialness of these witnesses is dubious, however, given the remoteness of these firms' connection to the alleged profit skimming at issue. USO did not have a direct ownership interest in the PWT partnership, and had only a small (less than 3%), indirect stake in the actual building.[7] Thus, even if the profit-skimming claims were equal in significance to the expropriation claims, it is far from clear the United States would be the appropriate forum for trial.

In summary, the essential witnesses—particularly those relevant to the central expropriation claims—are located predominantly in Japan. For those witnesses who are within the power of this court's compulsory process, the difficulty and expense associated with compelling these witnesses to testify in the United States would be prohibitive. A Japanese court

---

[7] USO had about an 11% interest in a partnership, Madison Club 90 LP, which in turn had roughly a 26% interest in another partnership, PWT Limited Partnership, which in turn owned the Paine Webber Tower.

13

will have substantially less difficulty in securing the appearance of its own residents and citizens. Even for the willing witnesses, a flight from Japan to Chicago takes approximately thirteen hours[8] and is extremely expensive. *See Pyrenee, Ltd.* v. *Wocom Commodities, Ltd.*, 984 F. Supp. 1148, 1165 (N.D. Ill. 1997) (noting that cost of transporting witnesses from Hong Kong would be prohibitive). The second private interest factor thus weighs in favor of dismissal.

### 3. Other Practical Problems

The fourth private factor requires "a practical evaluation of where trial would be most efficient and economical." *Wocom*, 984 F. Supp. at 1318. The Mizuho Bank Defendants argue that, in addition to the burdens and expenses that would arise due to the great distance between Illinois and Japan, the case will be "twice as burdensome" due to the fact that the "vast majority of witnesses' testimonies, statements and documents will be in Japanese," and thus require translation. Def.'s Mot. at 11. Indeed, USO itself appears to have already introduced "over 1000 pages of transcripts of Japanese meetings and telephone conversations, divided into 141 exhibits" in the case pending before the Tokyo District Court. Def.'s Reply at 11. Given the predominance in this case of evidentiary documents written in Japanese and witnesses who speak only Japanese, the translation costs that would be imposed by trial in an American court are substantial. These costs could largely be avoided by a trial in Japan, where only the relatively small number of documents written in English and the testimony of few English

---

[8] *See* MeetInChicago.com, Average Flight Times to Chicago, http://www.meetinchicago.com/map_flighttimes.html (last visited Sept. 20, 2007).

speaking witnesses, if any, would have to be translated into Japanese. The cost of translation is thus an additional private interest factor that weighs in favor of dismissal.[9]

### B. The Public Interest Factors

The public interest factors include (1) "the administrative difficulties stemming from court congestion," (2) "the local interest in having localized disputes decided at home," (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action," (4) "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law," and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Kamel*, 108 F.3d at 803 (citing *Piper*, 454 U.S. at 241 n.6). Because the fourth factor does not appear to be significant in this case, the court need not consider it here, but will consider each of the other four factors in turn.

#### 1. Court Congestion

The first public interest factor weighs the relative administrative difficulties that may arise from court congestion. *Kamel*, 108 F.3d at 803. On the one hand, the Mizuho Bank Defendants argue that the Northern District of Illinois is a highly congested forum—an assertion supported by a number of previous federal court decisions. *See, e.g.*, *Macedo* v. *Boeing Co.*, 693 F.2d 683, 690 (7th Cir. 1982) (noting congestion of the Northern District of Illinois). On the

---

[9] The parties raised a number of other issues that might be considered as additional private interest factors, such as the difficulty of enforcing the final judgment of an American court against a Japanese defendant, and forum selection clauses (designating Japan as the agreed upon forum) in contracts between Asahi Kogyo and Okamoto. None of these additional private interest factors, however, is substantial enough to have a significant effect on the outcome of this analysis.

15

other hand, USO contends that the Japanese court system is also clogged with cases, and that "the court in Japan will not be able to resolve the merits of the claims there for years." Pl.'s Resp. at 20. As noted by previous courts, "[d]etermining whether a foreign forum is less congested than one of our own is difficult at best." *In re Factor VIII or IX Concentrate Blood Prods. Liability Litigation* (*Gullone* v. *Bayer Corp.*), 408 F. Supp. 2d 569, 588 (N.D. Ill. 2006). Without further information about the relative congestion of each jurisdiction, this factor is neutral.

### 2. Local Interest in the Dispute

The second public interest factor considers the local interest in having localized disputes decided at home. *Kamel*, 108 F.3d at 803. The Mizuho Bank Defendants argue that Japan has a far greater interest in regulating the conduct of Japanese financial institutions and their employees, particularly when the allegations concern wrongful conduct against Japanese businesses and individuals. *See Republic of Panama* v. *BCCI Holdings (Luxemborg) S.A.*, 119 F.3d 934, 953 (11th Cir. 1997). Indeed, the fiduciary relationship that, according to USO's complaint, Mizuho abused in carrying out the alleged profit-skimming and expropriation of funds is the fundamentally Japanese relationship between a company and its "main bank." The defendants' argument is further bolstered by USO's repeated contention that the alleged expropriation was motivated by "pressure from Japanese regulators." Pl.'s Resp. at 19.

USO counters that Illinois also "has a strong interest in providing a forum for redressing injuries suffered by its residents." Pl.'s Response at 20. USO's suggestion that it should be viewed strictly as "an Illinois resident" is questionable, however, given that—as discussed above—it was set up as a mere "tool" by means of which Asahi Kogyo could invest in the Paine

16

Webber Tower, and that it "had no other business in reality." Def.'s Reply at 8 n.8; Saito Decl. Ex. 5 at 9. Indeed, USO's appears to have a Japanese address, at an Asahi Kogyo building in Tokyo. Ono Decl. ¶ 14. The second public interest factor thus weighs in favor of dismissal.

### 3. Choice of Law in Relation to the Home Forum

The third public interest factor considers "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Kamel*, 108 F.3d at 803. "A federal court sitting in diversity applies the choice of law rules of the state in which it sits." *Fredrick* v. *Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998). Illinois applies the "'most significant relationship' test for choosing the appropriate law in tort cases." *Id.* at 503–04. Under Illinois choice of law rules, "this means that the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.* at 504 (internal quotation marks and citations omitted).

Here, USO's central claim is that the Mizuho Bank Defendants expropriated funds from one Japanese bank account to another, as part of a scheme among Japanese entities. Because the sale proceeds that the Mizuho Defendant's allegedly misappropriated arose from USO's investment in a building located in Illinois, USO suggests that the place of injury is Illinois. But even USO's complaint alleges that "[f]ollowing the sale of the Paine Webber Tower, nothing happened with the proceeds for more than one and a half years," during which time "[t]he money sat in the bank" in Japan and "was reported on USO's books as cash in the bank." 2d. Am. Compl. at 8. The source of the funds is thus collateral to the fact that the money was sitting in a Japanese bank account prior at the time of the alleged expropriation. The place of injury, therefore, is Japan, and this court would have to apply Japanese law. Not surprisingly, the

17

Tokyo District Court, in its interim judgment, also found that the "place of alleged wrong" for the expropriation claims was Tokyo, and that "Japanese law governs the dispute." Shimada Reply Decl. at 2. The third public interest factor thus weighs in favor of dismissal.

### 4. The Burdens of Jury Duty

The fifth factor considers the possibility that it would be unfair to burden with jury duty the citizens of a forum that is unrelated to the litigation. *Kamel*, 108 F.3d at 803. As discussed above, the businesses, individuals, conduct, and laws at issue in this dispute are predominantly Japanese and have limited connection to Illinois. It would therefore be "grossly unfair to impose jury duty on American citizens" in this case, where "the American interest is at best indirect." *See Pyrenee, Ltd.* v. *Wocom Commodities, Ltd.*, 984 F. Supp. 1148, 1167 (N.D. Ill. 1997). The fifth public interest factor thus weighs in favor of dismissal.

### C. Deference to USO's Choice of Forum

Ordinarily, the court "should not supplant the plaintiff's choice of forum," particularly "when the plaintiff chooses his home forum." *Kamel*, 108 F.3d at 803. As a consequence, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508. Still, the Supreme Court has instructed, "[a] citizen's forum choice should not be given dispositive weight" and "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." *Piper Aircraft*, 454 U.S. at 255–56 n.23 (internal citations omitted).

Plaintiff USO is a Delaware corporation "created for the sole purpose of owning the Paine Webber Tower in Chicago," and thus claims that "Illinois is the natural place for USO to

seek[] and expect redress for its injuries arising from its lone business venture." Pl.'s Resp. at 8. Defendants counter, however, that "as a corporate plaintiff . . . or rather . . . a mere 'shell' of it," USO's connection to Illinois is less substantial than that of an individual plaintiff, "because a corporation's citizenship does not necessarily correlate with its convenience." Def.'s Reply at 8; *see also Reid-Walen* v. *Hansen*, 933 F.2d 1390, 1395 n.8 (8th Cir. 1991) ("A corporate plaintiff's citizenship or residence may not correlate with its real convenience because of the nature of the corporate entity, while an individual's residence more often will correlate with his or her convenience.").

Defendants also note that USO is a wholly-owned subsidiary "with little substantive existence separate from its foreign, Japanese parent, Asahi Kogyo." Def.'s Reply at 8. Indeed, Asahi Kogyo's bankruptcy trustee has acknowledged, in its complaint in the Japanese avoidance suit, that USO and Asahi Kogyo are "the same." Saito Decl. Ex. 5 at 9. Asahi Kogyo's trustee further acknowledged that USO was set up as a mere "tool" by means of which Asahi Kogyo could invest in the Paine Webber Tower, and that USO "had no other business in reality." Def.'s Reply at 8 n.8; Saito Decl. Ex. 5 at 9. The Seventh Circuit has previously noted that, "because the primary objective of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice of forum deserves less deference." *Kamel*, 108 F.3d at 803 (citations omitted). The great deference usually afforded to a plaintiff's choice of forum is likewise not merited here, where the plaintiff, though incorporated in the United States, is a wholly-owned subsidiary whose activities were limited to a single real estate investment at the behest of its foreign parent. Even if such deference were given to USO's choice of forum,

however, the private and public interest factors here so overwhelmingly favor dismissal—with nearly all pointing towards a Japanese forum—that dismissal would nonetheless be merited.

## CONCLUSION

Based upon the record in this case and the considerations discussed above, it is ordered that the Mizuho Bank Defendant's motion to dismiss under the doctrine of *forum non conveniens* (Dkt. No. 72) is granted, and plaintiff USO's complaint is dismissed without prejudice.


Dated: September 27, 2007  Enter:_____

                           JOAN HUMPHREY LEFKOW
                           United States District Judge